CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
SEP 01 2011
JULIA A. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| MICHAEL JAMES KEITZ, | ) |
| Plaintiff, | ) Civil Action No. 3:11-cv-00054 |
| v. | ) **MEMORANDUM OPINION** |
| UNNAMED SPONSORS OF COCAINE RESEARCH STUDY, et al., | ) By: Hon. Glen E. Conrad<br>) Chief United States District Judge |
| Defendants. | ) |

The plaintiff, Michael James Keitz, proceeding pro se, filed this action on August 26, 2011, naming as defendants the Commonwealth of Virginia, various branches of the University of Virginia, and a litany of unnamed individuals employed by the University of Virginia. The court granted the plaintiff's contemporaneously filed motion to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915(a)(1). After conducting an initial screening of the complaint, however, the court concludes that it must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### Factual Background

According to the complaint, the plaintiff responded in late 2009 to radio advertisements and applied to participate in a medical study at the University of Virginia's Center for Addiction Research and Education (UVA Care). (Complaint at 1.) UVA Care accepted the plaintiff's application and instructed the plaintiff that he would stay for nine days in UVA Care during the administration of the study. (Id.) As part of the study, the plaintiff would ingest three doses of the drug Topiramate and, subsequently, would be injected with cocaine to test Topiramate's effect on a drug user's desire for cocaine. (Id. at 1-2.) After ingesting the first dose of Topiramate, the plaintiff experienced severe panic and discomfort, and thereafter refused the remaining doses of the drug. (Id. at 2.)

UVA Care discharged the plaintiff nine days later, furnishing the plaintiff with written instructions to report immediately to the emergency room in the event that he experienced "manic like symptoms." (Id.) Several days after his release, the plaintiff suffered a severe panic attack and was transported by ambulance to the emergency room at the University of Virginia Medical Center. (Id.) The plaintiff communicated to the emergency room staff his participation in the Topiramate study and his reaction to the drug. (Id.) The emergency room staff then directed the plaintiff to linger in the lobby "alone in a panic state," where he waited for several hours until a woman summoned him to the window. (Id.) However, after the woman directed the plaintiff to return to his seat, the plaintiff collapsed in front of the window. (Id.)

Several more hours elapsed before the emergency room staff escorted the plaintiff to "an isolated area out of general earshot of the other patients." (Id.) After three doctors arrived, the plaintiff related to them his participation in the drug study and his reaction to the drug. (Id. at 3.) These three doctors deserted the plaintiff for another prolonged period before a nurse entered the plaintiff's room, administered one dose of valium, and "sen[t] him into the night[.]" (Id.) The ensuing four or five days, according to the plaintiff, were "a living hell of fear, panic and hallucinations." (Id.) During this time period, the plaintiff contacted UVA Care several times, but his communications caused the UVA Care staff to distance themselves from the plaintiff even further. (Id.)

The plaintiff then boarded a bus and travelled to Florida to "'cleanse' himself of 'demons.'" (Id.) However, before journeying to Florida, the plaintiff received a telephone call from a "very nervous" UVA Care doctor to whom the plaintiff reported his destination. (Id.) UVA Care made no further attempts to contact the plaintiff during his tenure in Florida. (Id. at 3-4.) One month later, the plaintiff elected to leave Florida and travel to New York. (Id. at 4.) Before executing his plans, the plaintiff telephoned a UVA Care doctor to inquire whether the

2

doctor wished to visit with the plaintiff. (Id.) After the doctor responded in the negative, the plaintiff travelled to New York. (Id.) While in New York, the plaintiff suffered from "grave intermittent panic attacks" and experienced "recollections of odd interrogational aspects of the [UVA Care study] he was in." (Id.) The plaintiff reported these medical issues to UVA Care, which categorized such reactions as commonplace. (Id.) After suffering from a particularly severe panic attack, the plaintiff committed himself to a New York hospital's emergency room, where he received certain sedatives. (Id.) The plaintiff alleges that he "continues to this day to struggle with panic attacks that were non[]existent prior to his participation in th[e UVA Care study]." (Id.)

## Standard of Review

Under 28 U.S.C. § 1915, which governs in forma pauperis proceedings, the court bears a mandatory duty to screen initial filings. Eriline Co. v. Johnson, 440 F.3d 656-57 (4th Cir. 2006). Specifically, "a district court must dismiss an action that the court finds to be frivolous or malicious or that fails to state a claim." Michau v. Charleston Cnty., 434 F.3d 725, 728 (4th Cir. 2006) (citing 28 U.S.C. § 1915(e)(2)(B)).

The standard of review for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) also applies to a dismissal for failure to state a claim under § 1915(e)(2)(B). Newsome v. EEOC, 301 F.3d 227, 231 (5th Cir. 2002). Thus, in reviewing a complaint under this statute, the court must "accept as true all well-pleaded allegations" and construe those allegations in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint need not assert detailed factual allegations, but must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Furthermore, even assuming the

3

factual allegations in the complaint are true, they "must be enough to raise a right to relief above the speculative level." Id.

## Discussion

The plaintiff styles his causes of action as ones for medical malpractice, medical negligence, and technical battery. In performing its screening function with respect to these claims, the court bifurcates its analysis and considers first the medical malpractice and negligence claims and then the technical battery claim.

Medical malpractice and medical negligence

In Virginia, the Virginia Medical Malpractice Act ("VMMA") requires any party alleging negligent medical care to obtain an expert certification of merit prior to serving process upon the defendant. Va. Code Ann. § 8.01-20.1 (2011). The failure to comply with this certification requirement gives rise to grounds for dismissal. Id.; Brembry v. United States, No. 7:10-cv-388, 2011 WL 121741, at *7 (W.D. Va. Jan. 13, 2011); Delaney v. Marsh, Civil Action No. 7:08-cv-00465, 2010 WL 1212569, at *3 n.6 (W.D. Va. Mar. 25, 2010). The VMMA authorizes excusal of the certification requirement only where the plaintiff, "in good faith, alleges a medical malpractice action that asserts a theory of liability where expert testimony is unnecessary because the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience." Va. Code Ann. § 8.01-20.1. Virginia courts have observed that instances excusing the certification requirement will be "rare." Beverly Enters.-Va. v. Nichols, 441 S.E.2d 1, 3 (Va. 1994).

Here, the plaintiff's complaint and the attached documents are devoid of any reference to the VMMA and to the expert certification requirement. The court finds improper in this instance the excusal of the certification requirement. Virginia precedent clearly establishes that: "[I]n most instances, expert testimony is required to assist the jury. Expert testimony is ordinarily

necessary to establish the appropriate standard of care, a deviation from that standard, and that such deviation was the proximate cause of damages." Id. "Virginia courts have allowed plaintiffs to proceed without experts in medical negligence cases only in situations where a layperson would know the requisite standard of care without assistance." Brembry, 2011 WL 121741, at * 8 (citing Beverly Enters.-Va., 441 S.E.2d at 3); see also, e.g., Coston v. Bio-Med. Applications of Va., Inc., 654 S.E.2d 560, 562 (Va. 2008) (determining that expert testimony was unnecessary where the plaintiff alleged that the defendant's employees twice placed her in a defective chair, causing her to fall and strike the ground both times); Dickerson v. Fatehi, 484 S.E.2d 880, 882 (Va. 1997) (explaining that expert testimony was unnecessary where the plaintiff alleged that a physician left a needle in her neck following surgery); Beverly Enters.-Va., 441 S.E.2d at 3 (finding expert testimony unnecessary on the issue whether the defendant's employees were negligent in leaving a tray of food with a patient who was unable to feed herself and who previously had serious choking incidents); Jefferson Hosp., Inc. v. Van Lear, 41 S.E.2d 441, 442-43 (Va. 1947) (determining that expert testimony was unnecessary where the plaintiff alleged that nurses delayed thirty minutes in responding to a call from an elderly, bed-ridden patient who previously had deserted his bed without assistance).

In the case at bar, it is not within the common knowledge and experience of a jury to determine whether the various defendants satisfied the standard of care in their responses both to the plaintiff's reaction to Topiramate and to the plaintiff's visits to the University of Virginia emergency room. Indeed, ascertaining the exact standard of care in the various situations alleged by the plaintiff is an exercise outside of a jury's ordinary comprehension. Thus, the court finds that this case fails to qualify as one of the rare instances in which to dispense with the VMMA's expert certification requirement. Accordingly, because the plaintiff failed to obtain such a certification, the court concludes that the plaintiff has failed to state a claim on which relief may

5

be granted. The plaintiff's claims for medical negligence and medical malpractice therefore must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

Technical battery

The plaintiff also sues under a theory of technical battery, alleging that he agreed to participate in UVA Care's drug addiction experiment, but did not consent to "any 'interrogation' test element[] imposed upon him while under the influence of known or unknown drugs." (Complaint at 5.) Under Virginia law, "the tort of battery is 'an unwanted touching which is neither consented to, excused, nor justified.'" Morvillo v. Shenandoah Mem'l Hosp., 547 F. Supp. 2d 528, 531 (W.D. Va. 2008) (quoting Koffman v. Garnett, 265 S.E.2d 258, 261 (Va. 2003)). The Supreme Court of Virginia has recognized the consensual nature of the relationship between a physician and a patient. Id. (citing Washburn v. Klara, 561 S.E. 2d 682, 685 (Va. 2002)). Hence, "'unless an emergency or unanticipated problem arises, a physician or surgeon must first obtain the consent of a patient before treating or operating on that patient.'" Id. (citing Washburn, 561 S.E. 2d at 685). One way in which a technical battery occurs is "when a medical procedure is performed that exceeds the scope of a patient's consent." Id. (citing Washburn, 561 S.E. 2d at 686).

> The plaintiff claims that he suffered
>
> recollections of odd interrogational aspects of the "study" he was in. He recalls being asked to name random words starting with the same letter and they spew from his mind seemingly devoid of his effort. The [UVA Care employee]'s comment "that's common" when he reports to them "My mind seems to open and all kinds of words come out. I don't know where they c[]ame from; T[h]en like a door shutting, I can[']t even think of the word cat . . . ." The plaintiff cannot arrive at a logical reason such questions would pertain to a study ostensibly to "see if topiram[a]te reduces cravings for cocaine."

(Complaint at 4.)

As mentioned above, 28 U.S.C. § 1915(e)(2)(B) authorizes a district court to dismiss an action that is frivolous. 28 U.S.C. § 1915(e)(2)(B). The Supreme Court has stated that "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "As the Courts of Appeals have recognized, § 1915(d)'s term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." Id. (footnote omitted). "Examples of frivolous claims include those whose factual allegations are 'so nutty,' 'delusional,' or 'wholly fanciful' as to be simply 'unbelievable.'" McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009) (citing Denton v. Hernandez, 504 U.S. 25, 29 (1992); Gladney v. Pendleton Corr. Facility, 302 F.3d 773, 774 (7th Cir. 2002)).

The court finds fanciful and unbelievable the factual allegations in the complaint regarding the plaintiff's alleged memories of interrogational techniques employed against him during the drug study and his claims regarding the subsequent opening and shutting of his mind. Thus, because the court finds that the plaintiff's technical battery claim lacks an arguable basis in fact, the court concludes that the plaintiff's claim is frivolous. The plaintiff's technical battery claim therefore must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

## Conclusion

For the foregoing reasons, the court concludes that the plaintiff's claims must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). The Clerk is directed to send a certified copy of this memorandum opinion and the accompanying order to the plaintiff.

ENTER: This 1st day of SEPTEMBER, 2011.

_/s/ Glen Conrad_
Chief United States District Judge