CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 2 2 2013

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| MICHAEL JAMES KEITZ, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:11-cv-00054 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| UNNAMED SPONSORS OF COCAINE | ) | By: Hon. Glen E. Conrad |
| RESEARCH STUDY, et al., | ) | Chief United States District Judge |
| | ) | |
| Defendants. | ) | |

This matter is before the court on plaintiff's two motions requesting the court serve

process on Helen Dragas, former Rector of the University of Virginia, George Keith Martin, the

current Rector, and Dr. Nassima Ait-Daoud, Director of the University of Virginia's Center for

Addiction Research and Education ("UVA CARE"). The plaintiff filed his initial complaint on

August 26, 2011, naming as defendants the Commonwealth of Virginia, a number of unnamed

individuals employed by the University of Virginia, and various branches of the University of

Virginia, including the Rectors and Visitors of the University of Virginia. For the reasons that

follow, the court will dismiss several of the defendants from the case, as well as the plaintiff's

breach of contract claim, and will direct service upon the remaining defendant.

## I.      Background

As recounted in greater detail in the court's previous opinion dismissing the case, Keitz v.

Unnamed Sponsors of Cocaine Research Study, No. 3:11cv00054, 2011 WL 3879518 (W.D. Va.

Sept. 1, 2011), the plaintiff alleges that he suffered severe mental anguish as a result of his

participation in a medical study at UVA CARE (the "study"). The study was meant to test the

effects of the drug Topiramate on a drug user's desire for cocaine. As part of the study, the

plaintiff was ingested with Topiramate, which caused him to experience severe panic and

discomfort. The plaintiff thereafter refused further injection of the drug for the remainder of the study. After the plaintiff was discharged from UVA CARE nine days later, he suffered a panic attack and was transported by ambulance to the emergency room at the University of Virginia Medical Center, where he reported his symptoms as well as his participation in the study. He alleges that he was ignored for a number of hours and left to linger in the hospital's lobby in a state of panic. He was eventually administered a shot of valium and discharged. He states that the ensuing four or five days were "a living hell of fear, panic and hallucinations." (Docket No. 1 at 3.)

The plaintiff then boarded a bus and traveled to Florida to "cleanse' himself of 'demons.'" (Id.) Before his trip, the plaintiff alleged he received a telephone call from a "very nervous" UVA CARE doctor to whom he reported his destination. (Id.) After spending a month in Florida, he prepared to leave for New York. Before departing, he called a UVA CARE doctor to inquire whether the doctor wished to visit with the plaintiff. He was told there was no need for a visit, and he continued on his way to New York. The plaintiff reported his medical issues to UVA CARE, which described such reactions as commonplace. He alleges that the study and the treatment he received at the hospital caused him to suffer ongoing panic attacks and hallucinations which were nonexistent prior to his participation in the study.

On September 1, 2011, the court sua sponte dismissed the plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). The court interpreted the plaintiff's complaint as alleging state law claims for medical malpractice and technical battery. The medical malpractice claims were dismissed because the plaintiff had failed to provide an expert witness opinion stating that the defendants had deviated from the applicable standard of care, as required under Virginia law by Va. Code § 8.01-20.1. On appeal, the United States Court of Appeals for the Fourth Circuit vacated the portion of the opinion dismissing the claims under Va. Code § 8.01-20.1 because the

plaintiff had neither requested service of process nor requested a defendant to accept service of process, a prerequisite to the expert witness requirement.[1]

On March 7, 2013, the plaintiff filed an amended complaint, naming, in addition to the previously named defendants, Dr. Ait-Daoud.  In the amended complaint, the plaintiff reiterated the facts and accusations in support of his medical malpractice claim.  The plaintiff also added a claim for breach of contract based on "a written contract to participate in a drug research experiment." (Docket No. 34 at 2.)  In support of this, the plaintiff alleged that the defendants "violated a legally enforceable obligation to plaintiff, per the signed agreement . . . ." (Id. at 4.) The plaintiff filed a motion to proceed in forma pauperis along with the amended complaint, and on March 20, 2013, the court simultaneously granted the plaintiff's motion to proceed in forma pauperis and directed the plaintiff to provide the names and addresses of the defendants upon whom he wished the court effect service.  On June 12, 2013, the plaintiff filed a motion directing the court to serve Ms. Dragas and indicating that additional names and addresses would be forthcoming.  On July 5, 2013, the plaintiff requested that the court also effect service on Mr. Martin and Dr. Ait-Daoud.

## II.     Discussion

### A.     Standard of Review

Where a plaintiff files a complaint pursuant to 28 U.S.C. § 1915, the court bears a mandatory screening duty to ensure that litigants are not abusing the privilege of avoiding the prepayment of administrative costs associated with the lawsuit.  Specifically, "a district court must dismiss an action that the court finds to be frivolous or malicious or that fails to state a claim." Michau v. Charleston Cnty., 434 F.3d 725, 728 (4th Cir. 2006) (citing 28 U.S.C. §

---

[1] The Fourth Circuit affirmed the court's opinion dismissing the plaintiff's technical battery claim.

1915(e)(2)(B)).  Hence, a claim that is based on a meritless legal theory may be dismissed sua sponte under § 1915(e)(2)(B).

Complaints filed by pro se litigants are held to a less stringent standard than those drafted by attorneys.  Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978).  While courts must liberally construe pro se documents, Estelle v. Gamble, 429 U.S. 97 (1976), "the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court."  Childress v. Charleston County Sheriff's Office, No. 2:13cv1008, 2013 WL 3270642, at *2 (D. S.C. June 26, 2013) (citing Weller v. Dept. of Social Servs., 901 F.2d 387 (4th Cir. 1990)).

**B.     Analysis**

**i.     Medical Malpractice Claim**

The plaintiff named several branches of the University of Virginia as defendants in the case.  The plaintiff has now requested the court serve the former and current Rector, Ms. Dragas and Mr. Martin, respectively.  However, in accordance with clear, binding authority from the Supreme Court of Virginia, the court finds that the University's Rectors are not subject to suit, as the office is an agency of the Commonwealth that is immune from civil liability.  The Rector and Visitors of the Univ. of Virginia v. Carter, 267 Va. 242, 244 (2004).  For the same reasons, the University itself, as well as the University's Medical Center, are also entitled to sovereign immunity.

In Carter, the Court first stated that "[a]bsent an express statutory or constitutional provision waiving sovereign immunity, the Commonwealth and its agencies are immune from liability for the tortious acts or omissions of their agents and employees."  Id.  The Court then addressed whether the waiver of sovereign immunity in the Virginia Tort Claims Act applied to the University.  Id. at 243 (citing Va. Code §§ 8.01-195.1 through 195.9).  The University had

4

raised an immunity defense against the plaintiff's medical malpractice claim for an injury she suffered while in the care of the University's health system. Id. at 244.  The Court ruled that the waiver did not apply against the University, and reversed the trial court's order denying the University's plea of sovereign immunity. Id. at 246.  ("Given the Act's lack of an express waiver of the common law sovereign immunity afforded the Commonwealth's agencies, UVA retains its sovereign immunity from the claim brought by Carter.").  The Court also reiterated the longstanding principle that individual "employees of the Commonwealth are entitled to sovereign immunity." Id. (citing Lohr v. Larsen, 246 Va. 81, 88 (1993); Gargiulo v. Ohar, 239 Va. 209, 215 (1990); Lentz v. Morris, 236 Va. 78, 83 (1988)).

    Carter mandates dismissal of the plaintiff's claims against the University in this case.  As in Carter, the plaintiff here has alleged a medical malpractice claim against branches of the University's health system.  The court is without authority to contravene a clear holding from the Supreme Court of Virginia regarding its interpretation of a provision of Virginia law.  See Erie R.R. v. Tompkins, 304 U.S. 64, 78-79 (1938).  Accordingly, the University and its branches will be dismissed from the case and the court will not attempt service on either Ms. Dragas or Mr. Martin.

    On the other hand, Dr. Ait-Dauod's case is not quite as clear.  The plaintiff has listed her as an individually named defendant.  While sovereign immunity often protects employees of the Commonwealth from liability for negligence, see Carter, 267 Va. at 246, the defense only attaches when the employee can satisfy all four elements of the test laid out in James v. Jane, 221 Va. 43, 53 (1980).  This requires the court to examine: "(1) the nature of the function performed by the employee; (2) the extent of the state's interest and involvement in the function; (3) the degree of control and direction exercised by the state over the employee; and (4) whether the act complained of involved the use of judgment and discretion." Messina v. Burden, 228 Va. 301,

313 (1984) (citing James, 221 Va. at 53). This test has been applied in numerous cases to state-employed doctors who are defending medical malpractice suits. See, e.g., Lohr v. Larsen, 246 Va. 81, 85-86 (1993); Gargiulo v. Ohar, 239 Va. 209, 213 (1990).

The court believes that while Dr. Ait-Dauod may eventually be able to assert a viable sovereign immunity defense, additional information about the case is necessary before the matter can be resolved. For example, her level of involvement in the study and her discretion in administering the program are both relevant to the analysis and cannot as yet be definitively determined. Therefore, the court will proceed to serve the complaint and summons on Dr. Ait-Dauod at the address provided by the plaintiff.

### ii.       Breach of Contract Claim

Under its mandatory screening duty, the court is also compelled to dismiss the plaintiff's breach of contract claim. The plaintiff's only description of the contractual agreement refers to it as "a written contract to participate in a drug research experiment." (Docket No. 34 at 2.) The lone factual allegation involving the contract claim is that the defendants "violated a legally enforceable obligation to plaintiff, per the signed agreement . . . ." (Docket No. 34 at 4.) Nothing more is said about the terms of the agreement, the parties' expectations and obligations under the agreement, or how the defendants' actions constituted a breach of the agreement.

The court finds that the plaintiff's allegation that the defendants "violated a legally enforceable obligation" is exactly the kind of conclusory statement that fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). Although the court must accept as true all plausible factual statements included in the complaint, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), the court is "not required to accept as true the legal conclusions set forth in the . . . complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999) (emphasis added); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The plaintiff's complaint in this case fails even to set forth the necessary elements of a breach of contract claim, and the court will therefore dismiss this portion of the complaint.

## III.    Conclusion

The court will proceed to direct service on Dr. Nassima Ait-Daoud at the address previously provided. The plaintiff is once again reminded that in making a medical malpractice claim, Virginia law requires him to have obtained a written opinion signed by an expert witness stating that the defendants "deviated from the applicable standard of care and the deviation was a proximate cause of the injuries claimed." Va. Code § 8.01-20.1. Given that he has now requested service on the defendants, he is expected to have already obtained such written certification. Indeed, the defendant may choose to invoke the provisions of the statute as a preliminary matter. Id. ("Upon written request of any defendant, the plaintiff shall, within 10 business days after receipt of such request, provide the defendant with a certification form that affirms that the plaintiff had obtained the necessary certifying expert opinion at the time service was requested . . . .").

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff and remaining defendant. The Clerk is also directed to include copies of this court's September 1, 2011 opinion in the matter (Docket No. 3), as well as the Fourth Circuit's February 15, 2013 Memorandum Opinion (Docket No. 29.)

**ENTER:** This _19th_ day of July, 2013.

_Chief United States District Judge_

7